[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, 42, and the defendant husband, 44, were married on May 18, 1974 in New York City. The plaintiff has resided in Connecticut for over one year prior to the filing of this action which was served on the defendant on September 17, 1993, returnable to October 19, 1993 and filed in court on September 27, 1993.
There are two children of the marriage, Neil A. born June 11, 1976 and Joseph E. born October 15, 1979. Neither party possessed any assets when married. The defendant was then employed as a junior accountant by Pepsi Cola, and he was studying for a master's degree. The parties' first residence was in the attic of the defendant's parents' home.
The defendant was soon transferred to Virginia allowing defendant to leave accounting for sales. The parties purchased their first home, a condominium unit, putting $500.00 down. After two years the defendant was promoted and transferred to Pennsylvania. The parties again purchased a home utilizing a $3,500.00 loan from plaintiff's step-father. After one year they moved back to Virginia where they remained for five years. Then CT Page 7868 they moved to a larger home in Oakton, Virginia for two years.
The parties' first relocation to Stamford, Connecticut, where they bought a home, was due to defendant's promotion to executive grade level and transfer to Pepsi's New York City offices.
Two years later, the parties moved to Massachusetts. After renting for some months, they bought a home in Sudbury, Massachusetts.
While there, in 1990, a marriage breakdown occurred when the plaintiff discovered the defendant had been unfaithful. The plaintiff left the Sudbury home, moving to another house.
In June 1991, the parties reconciled, agreeing to resume living together. Although unknown to defendant when he reconciled with the plaintiff, she also had an affair while separated, which she told him in 1992. Marriage counselling was attempted.
At the time of their reconciliation the parties moved back to Connecticut, purchasing a home in Westport for $550,000.00 and adding $50,000.00 improvements. The parties stipulated that fair market value as of the time of trial is $650,000.00. The plaintiff's mother also advanced $45,000.00 to the plaintiff. The home mortgage is $350,000.00 and the court finds the parties' equity to be $300,000.00.
In the summer of 1992 the plaintiff travelled to Italy. She asked the defendant to leave their home prior to her return. He did, staying away for one month. He returned in September, 1992 until February, 1993 when the defendant moved to the guest room. He remained in the house until December, 1993 when the final separation occurred.
During the marriage, beginning with the birth of Neil, the plaintiff's mother came to stay at the parties' home to assist her daughter remaining for 3 to 4 months each time. After her husband died her visits became more protracted. The defendant described his lack of privacy and that his wife and her mother would argue causing upset with plaintiff.
The defendant became Vice President of Entertainment which requires him to entertain customers from the gaming industry, sports, the military and the entertainment world. Extensive travel requiring absence from home was routine. For example, the CT Page 7869 defendant had 40,000 frequent flyer mile credits with both American Airlines and Delta Airlines.
The defendant receives an annual bonus of $42,480.00 paid for the year 1994. His base salary is $138,370.00 including an auto allowance and money paid for the tax on the allowance. He has been granted stock options in Pepsi's Stock Option Incentive Program (SOIP). The defendant exercised stock options in 1992 and 1993 but has not exercised any options in 1994 or in 1995. Since their potential future value depends on Pepsi's common stock share price existing on the exercise date, this court cannot project a value. In addition, Denley v. Denley, 38 Conn. App. 349 (1995) holds that stock options are property subject to division. (Plaintiff's Exhibit #4).
The defendant's employer projects a small raise and a small increase in the defendant's bonus for 1995 (Plaintiff's Exhibit 4), a total gross income of $180,530.00 (Id.). The defendant's financial affidavit adds only $22,480.00 of the bonus since the defendant obtained a $20,000.00 advance paid in 1994. The 1994 bonus when divided by 52 weeks is $811.00 gross weekly, not $432.00 as shown on the affidavit. The court finds that by doubling the net bonus of $218.00 which the defendant lists, his net disposable income is $1,880.00 weekly. Since the alimony order is taxable to the plaintiff and deductible by the defendant, the alimony payments should result in a net tax saving to the defendant in the area of $20,000 on his federal and state income tax returns (cf. Denley,
supra, pp. 352-353). The plaintiff's financial affidavit dated March 24, 1995 lists her net disposable income as $265.00 weekly. The combined net weekly income is beyond the child support guidelines schedule. An unallocated order in appropriate.
Despite his income the defendant felt compelled to borrow $15,000.00 from social friends, Mr. Mrs. Abdow of Virginia in October, 1993, explaining to them he needed the money to settle an American Express bill. Although the Abdows knew of the dissolution action, they lent the $15,000.00 of which $3,000.00 has been repaid. Although the Abdows failed to take the advice Polonius gave to his son Laertes[1], the court cites this episode as an example of the defendant's difficulties in managing money. The plaintiff had the same complaint concerning his inability to keep the house accounts current. The defendant also found it necessary to borrow $15,000.00 from his parents last summer. Presently, the defendant is living with a woman in Scarsdale, New York, splitting the household expense, and this will be considered in the financial CT Page 7870 awards, McGuinness v. McGuinness, 185 Conn. 7.
The plaintiff has had access to her mother's funds for the past several years. Her name is on a joint account with her mother on "John Hancock Cash Management Trust" as well as on a Shawmut Bank checking account (Defendant's Exhibits C, D, E, F, G, H, I, J, K, L, O); Central Fidelity Bank (Defendant's Exhibit M) and First Virginia Bank (Defendant's Exhibit N). Using these accounts the plaintiff has issued checks to The WIZ for a computer, to Country Wide Mortgage, as well as to "cash" (Defendant's Exhibits P, Q, R, S). The court concludes that the plaintiff was able to support a lifestyle that was beyond the defendant's financial ability.
The plaintiff is presently employed by a retail jewelry store at $7.75 hourly and a 1% commission on her quote. At the time of the marriage, the plaintiff was employed as an interpreter at the Queens County Courthouse. For a short time in 1975 she was a cosmetologist in a department store. A high school graduate, she has completed one year of college. The court concludes that the defendant has the much larger earning capacity and the greater opportunity to acquire assets in the future. "
The court also notes that the parties accepted $35,000.00 from plaintiff's mother to purchase the larger house in Oakton, Virginia. The court believes the defendant who testified that the parties couldn't afford the house "on our own."
In the element of causes of the breakdown, the court finds that the nature of the defendant's career requiring much travel, entertainment and absence from home was a cause; that the plaintiff's mother's extended visits and availability of her money as a cushion was a cause, the parties' individual infidelities were causes; and the parties' failure to manage their financial responsibilities were causes. However, the court finds it impossible to convert the causes into unequal fault.
Having reviewed the evidence in light of the statutory criteria, the court enters the following judgment.
1. A decree is entered dissolving the marriage on the ground of irretrievable breakdown. The defendant's cross complaint is dismissed as moot.
2. Joint legal custody of the minor child is awarded with physical custody given to the plaintiff and reasonable visitation CT Page 7871 awarded to the defendant.
3. The defendant shall continue to carry the minor child on all available coverages for medical, dental and related health insurance. Section 46b-84(d) is included in this order. The parties shall divide any unreimbursed bill balances incurred for the treatment of the minor.
4. The defendant is ordered to pay unallocated alimony and child support in the sum of $1,200.00 weekly until the child attains 19 years of age or sooner graduates from high school, or if the plaintiff sooner remarries or upon the death of either party. When the child support terminates either party may move for a second look at the periodic alimony obligation. An immediate wage withholding is ordered.
5. The court finds an arrearage due on the pendente order of $23,356 as of March 23, 1995 (Plaintiff's Exhibit 21) which the defendant shall pay at the rate of $200.00 weekly to be secured as part of the wage withholding ordered above.
6. The court finds that the allowance to prosecute that was ordered on March 23, 1994 in the amount of $5,000.00 was not paid. The court finds that $750.00 was awarded on May 31, 1994. (cf. #105 and #117 in file.) The defendant failed to pay either amount as ordered. He shall pay $50.00 weekly on said arrears commencing September 15, 1995 by payments to be made directly to Attorney Paul T. Tusch.
7. The plaintiff is awarded the defendant's interest in the marital home known as 1 Charcoal Lane, Westport, Connecticut together with the remaining contents therein. If the defendant does not furnish an executed quit claim deed in 30 days transfer may be completed pursuant to the statute made and provided. The plaintiff shall assume the mortgages and taxes due.
8. The defendant is awarded his pension free of any claim by the plaintiff.
9. The defendant is awarded his stock options free of any claims by the plaintiff.
10. the defendant is awarded his 401(k) plan free of any claim by the plaintiff. CT Page 7872
11. The defendant shall continue to maintain $100,000.00 face amount of life insurance naming the plaintiff primary beneficiary for so long as he is obligated to pay periodic alimony.
12. The plaintiff shall be solely responsible for the liabilities listed on her financial affidavit, except for 1993 state income tax.
13. The defendant shall be solely responsible for the liabilities listed on his financial affidavit and for the 1993 state income tax.
Counsel for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.